

JS-6

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

RAFAYEL MOVSESYAN,

          Petitioner,

    v.

PAM BONDI, et al.,

          Respondents.

Case No. 5:26-cv-00875-MBK

ORDER GRANTING PETITION FOR HABEAS CORPUS

      Rafayel Movsesyan, a stateless person who was born in the former Union of Soviet Socialist Republics ("U.S.S.R."), is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Mr. Movsesyan was paroled into the United States in 1990 and thereafter granted lawful permanent resident status. He is subject to an order of removal that became administratively final on February 15, 2011. After his removal proved impracticable, he was released from the custody of DHS under an

order of supervision. Since that time, Mr. Movsesyan has remained in the United States subject to the conditions of supervision.

On December 5, 2025, Mr. Movsesyan reported for his scheduled Immigration and Customs Enforcement ("ICE") check in appointment. At the appointment, ICE officers arrested Mr. Movsesyan without notice or an opportunity to explain why he should not be detained. He was later transferred to the Adelanto Detention Facility. During his confinement, the Government has not identified any county to which Mr. Movsesyan can be removed or taken any concrete steps to facilitate his removal.

In this habeas action, Mr. Movsesyan claims that his re-detention—without any notice or opportunity to be heard—violates procedural due process and that his ongoing detention violates 8 U.S.C. § 1231(a)(6) because his removal is not "reasonably foreseeable." Respondents do not dispute that they re-detained Petitioner without following the proper procedures and that they have taken no steps to facilitate Petitioner's removal, but nonetheless contend that the proper remedy for any legal violation is an informal interview with DHS officials or a bond hearing. However, such an interview or bond hearing would not remedy the core problem that the Government is not actively working to secure Petitioner's removal and therefore his detention serves no apparent purpose. Under these circumstances, the Court finds that Mr. Movsesyan's detention is not authorized by Section 1231. Accordingly, the Court orders that the Petition be granted and a writ of habeas corpus be issued requiring Mr. Movsesyan's immediate release and preventing his re-detention without notice and an opportunity to be heard.

# I.    FACTS AND PROCEDURAL HISTORY

Petitioner Rafayel Movsesyan is a stateless person who was born in Yerevan, a city in the former U.S.S.R. and now in the county of Armenia. Dkt. 1 at 10. He was paroled into the United States on August 17, 1990, pursuant to 8 U.S.C. § 1182(d)(5) and thereafter granted lawful permanent resident status. *Id.*; Dkt. 1-2 at 2. He has resided continuously in the United States for more than 35 years, has established deep personal, familial, and community ties, and is the father of two children who are United States citizens. Dkt. 1 at 10.

Petitioner is subject to an order of removal that arose from a prior federal criminal conviction. *Id.* The order became administratively final on February 15, 2011. *Id.* Mr. Movsesyan spent approximately 90 days in immigration custody before DHS released him under an Order of Supervision ("OSUP") after removal proved impracticable. *Id.* at 11-12.

Since his release in 2011, Petitioner has remained at liberty, complied with all conditions of his supervised release, and has not sustained any criminal convictions. *Id.* at 11. Nonetheless, on December 5, 2025, Petitioner was suddenly arrested by ICE when he reported for his regular ICE check-in interview. *Id.* at 3; Dkt. 6 at 2. When he reported for his interview, DHS officers "detained him without prior notice and revoked his release." Dkt. 1 at 11. DHS "did not provide written notice explaining the basis for revocation of his release, did not conduct an individualized assessment of flight risk, or danger to the community, and did not provide an informal interview or hearing before a neutral decisionmaker." *Id.* Mr. Movsesyan was subsequently transferred to the Adelanto Detention Facility, where he remains detained. *Id.*

Petitioner has not been informed that DHS has secured acceptance for any country for removal purposes. *Id.* His family has attempted to contact the

Armenian consulate to obtain confirmation of citizenship or travel documentation for Mr. Movsesyan, but has not been successful. Dkt. 1 at 10. To date, no country has issued travel documents or otherwise accepted Mr. Movsesyan for removal. *Id.*

DHS served Mr. Movsesyan with a Notice to Alien of File Custody Review that indicated a custody review would occur by February 18, 2026. *Id.* at 11. To date, DHS has not interviewed Mr. Movsesyan in connection with that review or provided any oral or written custody determination. *Id.*

Petitioner filed the instant habeas petition on February 23, 2026. Dkt. 1. He alleges two causes of action: (1) his re-detention without notice or an opportunity to be heard violates procedural due process; (2) his ongoing detention violates 8 U.S.C. § 1231, as construed by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. Petitioner requests that the Court (1) issue a writ of habeas corpus ordering Respondents to release Mr. Movsesyan from custody immediately and permanently enjoining his re-detention absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks; (2) order that DHS not transfer Petitioner out of this district during the Court's adjudication of this Petition; (3) declare that Mr. Movsesyan's re-detention without an individualized determination before a neutral decision maker violates the Due Process Clause of the Fifth Amendment; and (4) award reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, or any other applicable authority. Dkt. 1 at 17.

The Court issued its Order Requiring a Response to the Petition on February 25, 2026. Dkt. 4. In that Order, the Court instructed:

"In the answer, Respondents must address the merits of all grounds for relief asserted in the petition. Any arguments that the Petition should be dismissed shall be made in the answer and not by separate motion. Failure to file an answer by the deadline, or to respond to any Petitioner's claims for relief, may be deemed as consent to the granting of the Petition."

*Id.* at 2.

The Order further required Respondents to file an Answer to the Petition on or before March 4, 2026. *Id.* Respondents filed their Answer on that date. Dkt. 5, 6. Petitioner filed his reply on March 5, 2026. Dkt. 8.

The Court held a hearing on March 6, 2026. At the hearing, counsel for Respondents confirmed that they do not contest the facts of the case and reiterated their position that the appropriate relief is only a bond hearing pursuant to 8 U.S.C. § 1226(a). The parties have consented to Magistrate Judge jurisdiction. Dkt. 9, 10.

## II.   DISCUSSION

Petitioner has shown that his continued detention violates Section 1231, as construed by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. He has also shown that his re-detention without any notice or an opportunity to be heard violates procedural due process. Accordingly, the Court will grant the Petition, order Petitioner's immediate release, and prevent Respondents from re-detaining Petitioner without notice and an opportunity to be heard.

### A. Petitioner's Detention Violates 8 U.S.C. § 1231.

The Court begins by addressing Petitioner's second cause of action, which alleges a "Violation of the Due Process Clause of the Fifth Amendment" and "Unlawful Re-detention Under INA § 241 [8 U.S.C. § 1231]." Dkt. 1 at 13. Petitioner argues that his detention violates Section 1231(a)(6) because the statute "does not authorize automatic, indefinite, or summary detention once

the removal period has expired." *Id*. at 14.[1]

Section 1231 governs the Government's authority to detain non-citizens with final orders of removal. The statute provides that the Government "shall detain" noncitizens during the "removal period." 8 U.S.C. § 1231(a)(2)(A). The "removal period" is defined as beginning on the "latest of the following": "(i) The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or "(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id*. at § 1231(a)(1)(B).

Thereafter, the statute permits—but does not require—the detention of certain noncitizens found inadmissible or removable on specified grounds, "or who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id*. at § 1231(a)(6). Such individuals "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id*.

The Supreme Court has construed Section 1231(a)(6) not to permit the "indefinite detention" of noncitizens, which would otherwise pose serious constitutional concerns. *Zadvydas*, 533 U.S. at 690-96. The Court instead interpreted Section 1231(a)(6) to permit detention only where removal is "reasonably foreseeable." *Id*. at 699. To effectuate this limit, the Court found it "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id*. at 701. "After this 6–month period,

---

[1] In this cause of action, Petitioner also claims that "even where DHS asserts authority under INA § 241(a)(6), due process requires notice and an individualized determination by a neutral decisionmaker that re-detention is justified based on danger or flight risk." *Id*. at 15. Because this claim appears duplicative of the due process claim in Petitioner's first cause of action, the Court addresses them both below.

once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Because the statute only authorizes a "reasonable" period of detention to effectuate removal, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

The Court finds that Petitioner's detention is not authorized by Section 1231(a)(6) because his removal is not "reasonably foreseeable." Mr. Movsesyan has been detained since December 5, 2025. His current detention therefore exceeds 90 days, but is less than 180 days. However, Petitioner was previously detained for approximately 90 days by immigration authorities, until he release on an OSUP in 2011. The Government has therefore confined him, in total, for more than 180 days after he had an executable removal order, but has failed to remove him during that time. His ongoing detention is therefore "presumptively unreasonable." *See Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (holding "that the six-month period does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again" and collecting cases). *See also Bailey v. Lynch*, No. 16-cv-2600-JLL, 2016 WL 5791407, at *2 (D.N.J. Oct. 3, 2016) ("[T]he removal period does not restart simply because an alien who has previously been released is taken back into custody.").

Even if Petitioner's periods of detention cannot be cumulated, he may still challenge his detention as not authorized by Section 1231. *Zadvydas* establishes a "presumption" of unreasonableness after six months; it does not prevent a noncitizen from challenging their detention earlier where removal is demonstrably not foreseeable. *See Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d

387, 395-96 (D.N.J. 2025) ("Although the Supreme Court established a six-month period of presumptively reasonable detention, it did not preclude a detainee from challenging the reasonableness of his detention before such time" and collecting cases).

Regardless of whether Mr. Movsesyan's current detention qualifies as "presumptively" unreasonable, it is patently unreasonable as a factual matter. Since Petitioner's re-detention, the Government has not taken any concrete steps to secure travel documents to effectuate Mr. Movsesyan's removal to any country, much less identify a country to which he can be lawfully removed. It appears that the Government detained Petitioner under the guise of removing him to a third country without having investigated whether such removal was possible. The statute does not permit such needless detention.

To the contrary, the Supreme Court has made clear that the Section 1231(a)(6) only permits detention where removal is "reasonably foreseeable":

> "In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.

*Zadvydas*, 533 U.S. at 699-700.

In sum, Petitioner's ongoing detention does not advance Section 1231's basic purpose because there is no reason to think that the Government can, or will, remove him to any country. Accordingly, the Court concludes that Petitioner's continued detention is unlawful.

## B. Petitioner is Entitled to Notice and an Opportunity to be Heard Prior to Re-detention.

Petitioner also claims that his re-detention violates procedural due process because he was re-detained without notice or a pre-deprivation

1  hearing.

2          Governing regulations establish the process by which ICE may revoke a

3  noncitizen's release on an OSUP under Section 1231. *See* 8 C.F.R. §§ 241.4(l),

4  241.13(i). ICE may revoke release when a noncitizen violates a condition of

5  their OSUP, "on account of changed circumstances, [if ICE] determines that

6  there is a significant likelihood that the [noncitizen] may be removed in the

7  reasonably foreseeable future," or certain officials may exercise their

8  discretion to revoke release. *Id*. §§ 241.4(l)(1), § 241.4(l)(2), 241.13(i)(1),

9  241.13(i)(2). Upon revocation of release, ICE must provide the noncitizen a

10  copy of the decision "set[ting] forth the reasons for the continued detention."

11  *Id*. § 241.4(d). Additionally, the noncitizen must be "notified of the reasons for

12  revocation," *id*. § 241.4(l)(1), and afforded "an initial informal interview

13  promptly ... to respond to the reasons for revocation stated in the notification,"

14  *id*. § 241.13(i)(3).

15          Here, the Petitioner alleges—and the Respondents do not contest—that

16  he was re-detained without any notice or an opportunity to be heard, in

17  violation of the governing regulations. Respondents suggest that the

18  appropriate remedy for these regulatory violations is to provide Petitioner

19  with notice and an informal interview, as provided by the regulations, or a

20  bond hearing under Section 1226(a), while he remains detained. Dkt. 6 at 1-3.

21  The Court notes that, in similar cases in which noncitizens were detained

22  without the notice or interview required by the regulations, courts have

23  rejected this position and ordered noncitizens' release to restore the status quo

24  prior to their unlawful detentions. *V.K. v. Noem*, No. 5:26-cv-00241-MWC-SK,

25  2026 WL 246023, at *3 (C.D. Cal. Jan. 25, 2026); *Nazarian v. Noem*, No. 25-cv-

26  02694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025); *Esmail v.

27  Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept.

28

12, 2025).

Regardless, here, the Court has already found that Petitioner is entitled to release because his detention is not authorized by statute. The question now is what process is due before the Government may re-detain him again in the future. Given that the Government has already re-detained Petitioner once without any process and seemingly without any justification, it is appropriate to prevent the Government from re-detaining him again absent notice and a hearing at which the Government must show his detention is warranted. Multiple courts in this District—including the undersigned Magistrate Judge—have found that due process requires pre-deprivation notice and a hearing where, as here, the Government seeks to re-detain someone who has been living at liberty without incident for years. *See, e.g.*, *M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO preventing the petitioner's re-detention absent pre-deprivation notice and a hearing); *Cruz v. Lyons, et al.*, No. 5:25-cv-02879-MCS-MBK, Dkt. 12 (C.D. Cal. Nov. 6, 2025) (same); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition and ordering same relief).

As in these cases, the *Mathews v. Eldridge*, 423 U.S. 319 (1976) framework supports Petitioner's claim that that Government may only re-detain him after affording him meaningful pre-deprivation process—including notice and a hearing at which he can contest whether his re-detention is necessary—separate and apart from any procedures required by the regulations. Petitioner has a strong liberty interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary

detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore orders that the Government cannot re-detain Petitioner absent notice and a pre-deprivation hearing at which the Government must justify the need to detain him.

### III.  CONCLUSION

For the foregoing reasons, the Court will **GRANT** the Petition and issue a writ of habeas corpus requiring Petitioner's immediate release, subject to appropriate conditions of supervision, and preventing Respondents from re-detaining Petitioner without notice and a pre-deprivation hearing. The Court also **ORDERS** Respondents to file a status report within seven days to confirm that Petitioner has been released from custody. A separate judgment will issue.

Dated: March 9, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE